IN THE MATTER OF JAMES SHELTON BANKS

No. 44

(Filed 6 June 1978)

1. Statutes § 10— construction of criminal statute

While a criminal statute must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress.

2. Statutes §§ 5.1, 5.6— construction of statute—ambiguous or unambiguous language

When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein; but where a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, and the courts will interpret the language to give effect to the legislative intent.

3. Statutes § 5.9— construction of statute—purpose

Where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded.

**4. Obscenity § 4— "Peeping Tom" statute—judicial interpretation—constitutionality**

The statute making it a crime to "peep secretly into any room occupied by a female person," G.S. 14-202, prohibits the wrongful spying into a room upon a female with the intent of violating the female's legitimate expectation of privacy, and as so interpreted the statute is sufficiently definite to give an individual fair notice of the conduct prohibited so that it does not violate Article I, § 19 of the N.C. Constitution or the Due Process Clause of the U.S. Constitution by reason of vagueness and uncertainty.

**5. Obscenity § 4— "Peeping Tom" statute—constitutionality**

The statute making it a crime to "peep secretly into a room occupied by a female person," G.S. 14-202, is not so overbroad as to proscribe innocent and legitimate conduct when narrowed by judicial interpretation to require that the act condemned must be a spying for the wrongful purpose of invading the privacy of a female occupant of the room.

ON respondent's petition for discretionary review, prior to determination by the Court of Appeals, of order entered by *Gentry, J.,* on 21 September 1977 in GUILFORD District Court.

On 2 September 1977 a juvenile petition was filed against James Shelton Banks, a minor, alleging that he had violated G.S. 14-202 in that he did "unlawfully and wilfully peep secretly into a room occupied by Alvalena Manring, a female person." Prior to the introduction of evidence Banks' attorney moved to dismiss the petition for the reason that G.S. 14-202 is unconstitutional in that it is "overly broad" and "void for vagueness." On 21 September 1977 Judge Gentry found the statute unconstitutional "on the grounds listed" and dismissed the proceeding.

We allowed petition for discretionary review prior to determination by the Court of Appeals.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Joan H. Byers for the State, appellant.*

*Public Defender Wallace C. Harrelson, and Assistant Public Defender Michael F. Joseph for respondent appellee.*

MOORE, Justice.

The State argues that the trial court erred in ruling that G.S. 14-202, the so-called "Peeping Tom" statute, is unconstitutional. Respondent, however, contends that this statute is unconstitutional for two reasons. First, that it is unconstitutionally vague,

because "men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." *Connally v. General Construction Co.,* 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126 (1926).

G.S. 14-202 provides:

> "*Secretly peeping into room occupied by female person.*—Any person who shall peep secretly into any room occupied by a female person shall be guilty of a misdemeanor and upon conviction shall be fined or imprisoned in the discretion of the court."

The requirement that a statute be couched in terms of appropriate definiteness has been referred to as a fundamental common law concept. *Pierce v. United States,* 314 U.S. 306, 86 L.Ed. 226, 62 S.Ct. 237 (1941). Early in the last century this Court, in *Drake v. Drake,* 15 N.C. 110 (1833), said:

> "Whether a statute be a public or a private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it, be itself intelligible. . . ." *See also State v. Partlow,* 91 N.C. 550 (1884).

This requirement of definiteness has in this century been declared an essential element of due process of law. *See Connally v. General Construction Co., supra.* Several United States Supreme Court cases indicate that the evils remedied by the definiteness requirement are the lack of fair notice of the conduct prohibited and the failure to define a reasonably ascertainable standard of guilt. *See Lanzetta v. New Jersey,* 306 U.S. 451, 83 L.Ed. 888, 59 S.Ct. 618 (1939); *Connally v. Construction Co., supra; cf.* Note, "The Void-For-Vagueness Doctrine In The Supreme Court," 109 U. Pa. L. Rev. 66, 77 (1960). In present case respondent does not advance a strict vagueness argument based on the lack of intelligibility of the terms employed in the challenged statute. Instead, he argues that the statute cannot mean what it says, since, if taken literally, it would prohibit much conduct which the legislature clearly did not intend to include. Its intended scope is therefore indefinite and reasonable men could differ as to its application. Thus, concludes defendant, the statute is unconstitutionally vague.

In passing upon the constitutionality of the statute, we begin with the presumption that it is constitutional and must be so held unless it is in conflict with some constitutional provision of the State or Federal Constitutions. *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1963); *State v. Warren*, 252 N.C. 690, 114 S.E. 2d 660 (1960); *State v. Lueders*, 214 N.C. 558, 200 S.E. 22 (1938). A well recognized rule in this State is that, where a statute is susceptible to two interpretations — one constitutional and one unconstitutional — the Court should adopt the interpretation resulting in a finding of constitutionality. *Smith v. Keator*, 285 N.C. 530, 206 S.E. 2d 203, (1974); *State v. Frinks*, 284 N.C. 472, 201 S.E. 2d 858 (1974); *Randleman v. Hinshaw*, 267 N.C. 136, 147 S.E. 2d 902 (1966).

[1, 2] Criminal statutes must be strictly construed. *State v. Ross*, 272 N.C. 67, 157 S.E. 2d 712 (1967); *State v. Brown*, 264 N.C. 191, 141 S.E. 2d 311 (1965). But, while a criminal statute must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress. *State v. Brown*, 221 N.C. 301, 20 S.E. 2d 286 (1942); *State v. Hatcher*, 210 N.C. 55, 185 S.E. 435 (1936). The intent of the legislature controls the interpretation of a statute. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975), and cases cited therein. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein. *State v. Camp*, 286 N.C. 148, 209 S.E. 2d 754 (1974). But when a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, *State v. Humphries*, 210 N.C. 406, 186 S.E. 473 (1936), and the courts will interpret the language to give effect to the legislative intent. *Ikerd v. R.R.*, 209 N.C. 270, 183 S.E. 402 (1936). As this Court said in *State v. Partlow*, 91 N.C. 550 (1884), the legislative intent ". . . is to be ascertained by appropriate means and *indicia*, such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means. . . ." Other *indicia* considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its

adoption, *Milk Commission v. Food Stores*, 270 N.C. 323, 154 S.E. 2d 548 (1967); earlier statutes on the same subject, *Lithium Corp. v. Bessemer City*, 261 N.C. 532, 135 S.E. 2d 574 (1964); the common law as it was understood at the time of the enactment of the statute, *State v. Emery*, 224 N.C. 581, 31 S.E. 2d 858 (1944), 157 A.L.R. 441; and previous interpretations of the same or similar statutes, *cf. Wainwright v. Stone*, 414 U.S. 21, 38 L.Ed. 2d 179, 94 S.Ct. 190 (1973).

[3] Finally, it is a well settled rule of statutory construction that, where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded. *State v. Spencer*, 276 N.C. 535, 173 S.E. 2d 765 (1970); *see* 12 Strong, N.C. Index 3d, Statutes § 5.9, and cases cited therein. Where possible "the language of a statute will be interpreted so as to avoid an absurd consequence. . . ." *Hobbs v. Moore County*, 267 N.C. 665, 671, 149 S.E. 2d 1, 5 (1966).

On the subject of the constitutional challenge of a statute for indefiniteness, the United State Supreme Court has said, in *Boyce Motor Lines v. United States*, 342 U.S. 337, 96 L.Ed. 367, 72 S.Ct. 329 (1952):

> "A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

*See also State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768 (1961); *State v. Morrison*, 210 N.C. 117, 185 S.E. 674 (1936).

In *Wainwright v. Stone, supra*, where defendant challenged the Florida "Crime Against Nature" statute on grounds of

vagueness, the United States Supreme Court, in upholding the constitutionality of the statute, held that the judgment of federal courts as to the vagueness of a state statute must be made in the light of prior state constructions of the statute. This holding implies that a statute challenged on the grounds of impermissible vagueness should not be tested for constitutional specificity in a vacuum, but should be judged in the light of its common law meaning, its statutory history and the prior judicial interpretation of its particular terms.

Applying the foregoing principles, we now turn to an examination of G.S. 14-202, commonly known as the "Peeping Tom" statute. The statute apparently was derived from the common law crimes of common nuisance and eavesdropping. *See* IV Blackstone 166, 168. The words "Peeping Tom" have a commonly understood meaning in this country as being one who sneaks up to a window and peeps in for the purpose of spying on and invading the privacy of the inhabitants. See, for instance, Ga. Code, § 26-3002; 70 C.J.S. p. 384.

Our statute, passed by the General Assembly in 1923, makes it a crime to "peep secretly." This Court has had the occasion to deal with this statute in four prior cases: *State v. Banks*, 263 N.C. 784, 140 S.E. 2d 318 (1965); *State v. Bivins*, 262 N.C. 93, 136 S.E. 2d 250 (1964); *State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960); *State v. Peterson*, 232 N.C. 332, 59 S.E. 2d 635 (1950). All four of these cases involved conduct within the purview of the common usage of the term "Peeping Tom." In *State v. Bivins*, *supra*, the Court interpreted the word "peep" in a manner so as to convey the idea of a "Peeping Tom." The Court said that "to peep" means "to look cautiously or slyly—as if through a crevice—out from chinks and knotholes."

This Court has not expressly defined the word "secretly" as used in the statute. Respondent argues that the word adds nothing to the clarification of the meaning of the statute. In order to pass on his contention, we must resort to the rules of statutory construction set forth above, and to the additional rule that words of a statute are not to be deemed merely redundant if they can reasonably be construed so as to add something to the statute in harmony with its purpose. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968). *See also State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972).

[4]  In *State v. Banks*, *supra*, the Court stated that, when charged with a violation of G.S. 14-202, the defendant "is entitled to know the identity of the female person whose privacy he is charged with having invaded." This Court has, therefore, indicated that the word "secretly" as used in G.S. 14-202 conveys the definite idea of spying upon another with the intention of invading her privacy. Hence, giving the language of the statute its meaning as interpreted by this Court, G.S. 14-202 prohibits the wrongful spying into a room upon a female with the intent of violating the female's legitimate expectation of privacy. This is sufficient to inform a person of ordinary intelligence, with reasonable precision, of those acts the statute intends to prohibit, so that he may know what acts he should avoid in order that he may not bring himself within its provisions.

Defendant cites *Kahalley v. State*, 254 Ala. 482, 48 So. 2d 794, to support his contention that G.S. 14-202 is unconstitutionally vague. In *Kahalley*, the Alabama Supreme Court held that the Alabama "Peeping Tom" statute was violative of the Fourteenth Amendment in that it was so vague and uncertain that it fixed no ascertainable standard whereby the public could be governed. The Alabama statute is, however, distinguishable from G.S. 14-202 in that the former statute contains no requirement that the peeping be done "secretly." Thus, this element of wrongful intent required by the North Carolina statute is missing in the Alabama statute.

We hold, therefore, that G.S. 14-202 is sufficiently definite to give an individual fair notice of the conduct prohibited, and to guide a judge in its application and a lawyer in defending one charged with its violation, and that this statute violates neither Article I, Section 19, of the North Carolina Constitution, nor the Due Process Clause of the Federal Constitution by reason of vagueness and uncertainty.

[5]  Respondent next argues that G.S. 14-202 is unconstitutional because it prohibits innocent conduct, and is therefore overly broad. In speaking to a similar contention, Mr. Justice Brennan, for the Supreme Court of the United States, in *Zwickler v. Koota*, 389 U.S. 241, 19 L.Ed. 2d 444, 88 S.Ct. 391 (1967), stated:

"[H]is constitutional attack is that the statute, although lacking neither clarity nor precision, is void for

'overbreadth,' that is, that it offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.' [Citations omitted.]"

In *Broadrick v. Oklahoma*, 413 U.S. 601, 37 L.Ed. 2d 830, 93 S.Ct. 2908 (1973), the United States Supreme Court, in interpreting the overbreadth doctrine, said:

". . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. . . ."

In that case, the Court indicated that the doctrine of overbreadth has not and will not be invoked when a limiting construction has been or could be placed on the challenged statute. *Id.* at 613, 37 L.Ed. 2d at 841.

In *Lemon v. State*, 235 Ga. 74, 218 S.E. 2d 818 (1975), the Supreme Court of Georgia upheld the validity of their "Peeping Tom" statute. There, as here, defendant argued that the Georgia statute was overbroad and hence unconstitutional. In answer to this argument, that court stated:

"[T]he statute is not so overbroad as to proscribe legitimate conduct. The statute is sufficiently narrowed by the requirement that the defendant act with wrongful intent, thereby omitting from its scope those persons who have a legitimate purpose upon another's property, or those who only inadvertently glance in the window of another."

Likewise, our statute, G.S. 14-202, is sufficiently narrowed by judicial interpretation to require that the act condemned must be a spying for the wrongful purpose of invading the privacy of the female occupant of the room, thereby omitting from its scope those persons who have a legitimate purpose upon another's property and those who only inadvertently glance in the window of another. Thus, the statute is not so overbroad as to proscribe

legitimate conduct. We hold, therefore, that the statute is not unconstitutional for overbreadth.

Judge Gentry's ruling that G.S. 14-202 is unconstitutional is erroneous and is reversed. The case is remanded to the District Court of Guilford County for further proceedings in accordance with this opinion.

Reversed and remanded.