STATE OF NORTH CAROLINA v. TRAVIS HICKS PROCTOR

No. 817SC1264

(Filed 17 August 1982)

1. **Narcotics § 1; Statutes § 5.4— trafficking in cocaine—"derivative of coca leaves"—inclusion in statutes—statutes not unconstitutionally vague**

   Where an indictment charged defendant with trafficking in cocaine in violation of G.S. 90-95(h)(3), and the State filed a bill of particulars in response to a request by defendant which stated that the substance was "cocaine which is a derivative of coca leaves," the trial court did not err in failing to grant defendant's motion to dismiss on the grounds that "a derivative of coca leaves" is not included within the language of G.S. 90-95(h)(3) since the full definition of cocaine in G.S. 90-90(a)4 may be read into the trafficking in cocaine provisions of G.S. 90-95(h)(3) and defendant was provided with sufficient notice for him to determine that the conduct which the State's evidence tended to show was proscribed.

2. **Narcotics § 3.1— defense curing deficiency in State's proof—eliciting testimony on cross-examination**

   The trial judge did not err in admitting cocaine into evidence where an SBI chemist failed to identify the cocaine as a derivative of coca leaves as it was identified in the bill of particulars which the State filed since the defense elicited the necessary information on cross-examination by having the chemist state that he "identified the compound cocaine, which is extracted from, or in a broad sense a derivative of coca leaves."

3. **Criminal Law § 102.5— improper question on cross-examination of defense witness—new trial not required**

   Although the trial judge erred in overruling an objection to a question of a defense witness in which the district attorney asked, "Well, the truth of the matter is that you take the Fifth Amendment because you know that in some way your testimony will show to the ladies and gentlemen of the jury what they already know, that Travis Hicks Proctor is one of the biggest drug dealers in Wilson County . . . isn't that it, Mr. Hinnant?", the defendant did not move for a mistrial on the basis of the question, and the question did not reach the level of gross impropriety or the level of inflammatory impact that would require an award of a new trial.

APPEAL by defendant from *Llewellyn, Judge.* Judgment entered 19 June 1981 in Superior Court, WILSON County. Heard in the Court of Appeals 5 May 1982.

Defendant was indicted for trafficking in cocaine. He pleaded not guilty and was tried before a jury.

The evidence for the State tended to show that S.B.I. Agent Irvin Lee Allcox met the defendant through Huley Hinnant, Jr., and Albert Junior Jones while Allcox was working in an undercover capacity. Allcox discussed purchasing large amounts of cocaine from the defendant, and a sale was arranged for 12 August 1980. On the morning of that date, Allcox and another S.B.I. agent met the defendant at a motel outside Wilson and followed defendant to his mother's house. There the defendant made a telephone call and stated that his source would deliver the cocaine at noon; that he would take part of the money to his source, who would wait outside in his car, and bring the cocaine inside to be weighed and tested; and that he would then take the rest of the money to the source. A man in a Mercedes automobile arrived about noon, and defendant took part of the money to him. When defendant returned with the cocaine, he was arrested. The Mercedes sped away, but it was stopped and its driver, Gordon Dildy, was arrested. S.B.I. chemist Neil Evans identified the material submitted to him for analysis as 458.2 grams of white powder containing cocaine and dextrose.

The defendant testified and presented Hinnant and Jones as witnesses. Defense evidence tended to show that defendant knew Allcox was an undercover agent, that defendant was helping him set up Gordon Dildy for arrest and had been promised protection, and that defendant was arrested only when the plan went awry and Dildy fled from the scene.

Defendant was found guilty as charged, and a sentence of imprisonment and a fine were imposed. Defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Douglas A. Johnston, for the State.*

*Abrams & Clark, by John E. Clark, for defendant appellant.*

MORRIS, Chief Judge.

[1]　The indictment charged defendant with trafficking in cocaine in violation of G.S. 90-95(h)(3). The defendant moved for a bill of particulars asking the State to identify more specifically the controlled substance involved. The State filed a bill of particulars stating that the substance was "cocaine which is a derivative of coca leaves." Thereafter, the defendant moved to dismiss on grounds that "a derivative of coca leaves" is not included within the language of G.S. 90-95(h)(3) and, alternatively, on grounds that the statute is unconstitutionally vague as to whether "a derivative of coca leaves" is included within its terms. This motion was denied. At various times during trial, the defendant again moved to dismiss on these same grounds. These motions were denied, and all of these rulings are included in the defendant's first assignment of error. The defendant argues that "a derivative of coca leaves" is not included in G.S. 90-95(h)(3) as a substance that will support the crime of trafficking in cocaine and, alternatively, that the statute is unconstitutionally vague.

G.S. 90-89 through 90-94 list various controlled substances. Cocaine is a Schedule II controlled substance defined by the following language of G.S. 90-90(a)4:

> Coca leaves and any salts, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

G.S. 90-95 declares various crimes relating to controlled substances. G.S. 90-95(b) and (d), the subsections dealing with possession, manufacture, sale, delivery, and possession with intent to manufacture, sell or deliver, rely upon the schedules of controlled substances contained in G.S. 90-89 through 90-94. G.S. 90-95(h) deals with trafficking in controlled substances. It does not refer to the schedules set by the earlier statutes. G.S. 90-95(h)(3), the subdivision dealing with cocaine, reads as follows:

> Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of coca leaves or any salts, com-

pound, derivative, or preparation thereof which is chemically equivalent or identical to any of these substances (except decocainized coca leaves or any extraction of coca leaves which does not contain cocaine or ecgonine) or any mixture containing any such substance, shall be guilty of a felony which felony shall be known as "trafficking in cocaine" and if the quantity of such substances or mixture involved . . . .

It is at once apparent that G.S. 90-95(h)(3) omits certain language included in the G.S. 90-90(a)4 definition of cocaine. G.S. 90-90(a)4 includes three groups: (1) coca leaves; (2) any salts, compound, derivative or preparation of coca leaves; and (3) any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions *do not contain cocaine or ecgonine*. G.S. 90-95(h)(3) includes the first and third groups but not the second. The omission of the second group creates uncertainty as to what is included in the third group. For example, the meaning of the term "these substances" in the third group is clear when the second group is included but unclear when the second group is omitted. It is apparent to us that the omission of the second group listed in G.S. 90-90(a)4 from the language of G.S. 90-95(h)(3) was not a deliberate choice by the legislature since it results in an incomplete and confusing definition for the crime of trafficking in cocaine. We must determine the legal effect of this omission.

A criminal statute must be strictly construed, but the statute must be construed with regard to the evil which it is intended to suppress. *In re Banks*, 295 N.C. 236, 244 S.E. 2d 386 (1978) and cases cited therein. The intent of the legislature controls interpretation of the statute, and when the statute is unclear in its meaning, the courts will interpret it to give effect to the legislative intent. *Id.* The legislative intent will be ascertained by such *indicia* as

"the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means. . . ."

*Id.* at 239, 244 S.E. 2d at 389, *quoting State v. Partlow,* 91 N.C. 550 (1884). Further, it is well established that "where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded." *Id.* at 240, 244 S.E. 2d at 389. With the foregoing principles in mind, we turn to interpretation of G.S. 90-95(h)(3).

Subsection (h) was added to G.S. 90-95 in response "to a growing concern regarding the gravity of illegal drug activity in North Carolina and the need for effective laws to deter the corrupting influence of drug dealers and traffickers." *State v. Anderson,* 57 N.C. App. 602, 606, 292 S.E. 2d 163, 165 (1982). The purpose behind G.S. 90-95(h) is to deter trafficking in large amounts of certain controlled substances.

> Our legislature has determined that certain amounts of controlled substances and certain amounts of mixtures containing controlled substances indicate an intent to distribute on a large scale. Large scale distribution increases the number of people potentially harmed by use of drugs. The penalties for sales of such amounts, therefore, are harsher than those under G.S. 90-95(a)(1).

*State v. Tyndall,* 55 N.C. App. 57, 60-61, 284 S.E. 2d 575, 577 (1981). Subdivision (3) deals with the controlled substance cocaine. The felony created is referred to as "trafficking in cocaine." Thus the purpose of G.S. 90-95(h)(3) would not be served—indeed, it would be thwarted—by a more restrictive definition of cocaine than that in G.S. 90-90(a)4. Under these circumstances, we believe that the purpose of the trafficking statute must be given effect even if the strict letter thereof must be disregarded in order to do so. The schedules of controlled substances set forth in G.S. 90-89 through 90-94 and all the subsections of G.S. 90-95 deal with the same subject matter, violations of the Controlled Substances Act. Statutes dealing with the same subject matter are to be construed *in pari materia. Williams v. Williams,* 299 N.C. 174, 261 S.E. 2d 849 (1980); *State v. White,* 58 N.C. App. 558, 294 S.E. 2d 1 (1982). Thus, we believe that the full definition of cocaine in G.S. 90-90(a)4 may be read into the trafficking in cocaine provisions of G.S. 90-95(h)(3).

G.S. 90-95(h)(3), so construed, is not unconstitutionally vague.

> The standard is whether the statutory language gives a person of ordinary intelligence fair notice of what is forbidden by the statute. (Citations omitted.) A statute which does not involve First Amendment freedoms must be examined in light of the facts of the particular case when challenged as unconstitutionally vague. (Citations omitted.) The statute is not to be weighed in the delicate scales required where First Amendment freedoms are at stake. (Citation omitted.)

*State v. White*, 58 N.C. App. at 563, 294 S.E. 2d at 4. We conclude that the defendant was provided with sufficient notice for him to determine that the conduct which the State's evidence tended to show was proscribed. Thus, we hold that the defendant's motions to dismiss were properly denied and that his first assignment of error is overruled.

[2] By his second assignment of error, the defendant argues that the trial judge erred in admitting the cocaine into evidence since the S.B.I. chemist failed to identify the cocaine as a derivative of coca leaves. The State filed a bill of particulars identifying the controlled substance involved in the charge as "cocaine which is a derivative of coca leaves." A bill of particulars limits the evidence of the State to the items set forth in the bill. G.S. 15A-925(e); *State v. Knight*, 261 N.C. 17, 134 S.E. 2d 101 (1964). Although chemist Evans only identified the controlled substance as cocaine during direct examination, he stated during cross examination by defense counsel that he "identified the compound cocaine, which is extracted from, or in a broad sense a derivative of coca leaves." The defense cured any deficiency in the State's proof by eliciting this testimony on cross examination. The second assignment of error is overruled.

[3] Defendant's final assignment of error deals with a question asked during cross-examination of defense witness Huley Hinnant, Jr. After Hinnant had repeatedly asserted his right against self-incrimination, the district attorney asked, "Well, the truth of the matter is that you take the Fifth Amendment because you know that in some way your testimony will show to the ladies and gentlemen of the jury what they already know, that Travis Hicks Proctor is one of the biggest drug dealers in Wilson County . . . isn't that it, Mr. Hinnant?" Objection to the form of the question was overruled, and Hinnant answered, "I don't know that, I

wouldn't know." Defendant now argues that this question so prej-
udiced his case that he could not thereafter receive a fair trial.
We do not approve either the question or the trial judge's over-
ruling objection to it. "[C]ounsel may not, by argument or cross-
examination, place before the jury incompetent and prejudicial
matters by injecting his own knowledge, beliefs and personal
opinions not supported by the evidence." *State v. Locklear*, 294
N.C. 210, 217, 241 S.E. 2d 65, 69 (1978). However, in the present
case defendant only objected "to the form of the question." He
did not allege such prejudice as denied him a fair trial, and he did
not move for a mistrial on the basis of the question. We do not
believe that this question reached the level of gross impropriety
or the level of inflammatory impact that would require us to
award a new trial. *See State v. Jordan*, 49 N.C. App. 561, 272 S.E.
2d 405 (1980); *State v. Bailey*, 49 N.C. App. 377, 271 S.E. 2d 752
(1980), *disc. review denied*, 301 N.C. 723, 276 S.E. 2d 288 (1981).
The assignment is overruled.

In defendant's trial we find

No error.

Judges CLARK and MARTIN (Harry C.) concurred prior to 2
August 1982.