Cutting v. Foxfire Village

ROY F. AND BLANCHE E. CUTTING; RAYMOND AND OLIVE E. SANTINI; DAVID AND ELINOR L. SULLIVAN; ANN A. HENRICI; PRESCOTT W. AND D. JEAN DOWNER; R. WELLINGTON AND LOUISE H. DANIELS; DON F. AND DORIS B. McNEAL; WILLIAM AND HELEN SABOLSKY; RICHARD P. DUPONT; THOMAS DIXON DICKENS; GENE J. AND ROSEMARY C. FLURI; NORMAN L. AND THOMAS G. PULLAN; PAUL E. AND ANNA ROSCA; JAMES P. YUDES; CHARLES D. AND MARGARET S. ALSTAD; GERALD E. AND DOROTHY STEVENS; RAYMOND G. AND DOROTHY F. MATHER; RICHARD HELLER; AND FRANCIS R. WEIS v. FOXFIRE VILLAGE

No. 8420DC794

(Filed 4 June 1985)

**Municipal Corporations § 26— assessments for water system—value added—uniform assessments improper**

   A municipal council could not determine the value added basis for assessing property for a municipal water system by calculating the average value of the water system to all unimproved lots not containing wells, establishing a nominal percentage thereof as the increase in value to improved lots, and imposing a $2,400 assessment on all unimproved lots and a $120 assessment on all improved lots. Rather, G.S. 160A-218(3) requires individual assessments of lots based upon a set rate per dollar of value added to the lots served by the new system.

   APPEAL by plaintiffs from *Honeycutt, Judge*. Judgment entered 27 March 1984 in District Court, MOORE County. Heard in the Court of Appeals 1 April 1985.

   In this civil action plaintiffs appeal from an order dismissing their petition in which they contend, as owners of vacant, unimproved lots located in Foxfire Village, that the Foxfire Village Council improperly assessed their property for a proposed municipal water system. The issuance of a municipal revenue bond to finance the construction of the water system was approved in a referendum election held in November 1980. The water system became operational 1 August 1983. On 29 November 1983, the Foxfire Village Council adopted two resolutions to assess property owners for the construction of the water system. The resolutions imposed a $2,400.00 assessment on all unimproved lots and a $120.00 assessment on all improved lots. An improved lot was defined as one "which had water available from any sources other than the Developer-owned water system on the 1st day of August 1983," and an unimproved lot was defined as one "which did not

have an operating well upon the lot on the 1st day of August 1983."

Plaintiffs, owners of unimproved lots as defined by the resolutions, petitioned the Moore County District Court for a declaratory judgment, contending the amount of assessment was not determined according to requirements of the North Carolina General Statutes. The trial court made findings of fact, upon which it concluded as a matter of law the following:

1. The Plaintiffs have failed to prove, by the greater weight of the evidence, that Foxfire Village did not act reasonably and consistently with the evidence, facts, and the law, when it assessed $2,400.00 on all unimproved lots as of August 1, 1983.

2. The Plaintiffs have failed to prove, by the greater weight of the evidence, that Foxfire Village did not act reasonably and consistently with the evidence, facts, and the law, when it assessed $120.00 upon all lots that were improved as of August 1, 1983.

From an order dismissing plaintiffs' petition, plaintiffs appealed.

*Pollock, Fullenwider, Cunningham & Patterson, P.A., by Bruce T. Cunningham, Jr., for plaintiff appellants.*

*Johnson, Poole and Webster, by Samuel H. Poole, for defendant appellee.*

MARTIN, Judge.

The sole question presented by this appeal is whether the trial court erred in upholding the amounts of water assessments imposed by the Foxfire Village Council, and therefore, this appeal involves the interpretation of G.S. 160A-218(3), which provides a value added basis upon which assessments may be made. Because the requirements of G.S. 160A-218(3) have not been met, we reverse the trial court's order dismissing plaintiffs' petition.

Plaintiffs contend the Foxfire Village Council failed to comply with statutory provisions in determining the water assessments on lots within Foxfire Village. "Any city is authorized to make special assessments against benefited property within its corporate limits for: . . . [c]onstructing, reconstructing, extending,

and otherwise building or improving water systems." G.S. 160A-216(3). The manner in which Foxfire Village chose to make the assessments is set forth in G.S. 160A-218(3), which states as one alternative that the assessments may be made on the basis of:

> [t]he value added to the land served by the project, or subject to being served by it, being the difference between the appraised value of the land without improvements as shown on the tax records of the county, and the appraised value of the land with improvements according to the appraisal standards and rules adopted by the county at its last revaluation, at an equal rate per dollar of value added.

Thus, under the statute, property is assessed at an equal rate per dollar of value added. The amount of value added by the improvement is determined by computing "the difference between the appraised value of the land without improvements as shown on the tax records of the county, and the appraised value of the land with improvements according to appraisal standards and rules adopted by the county. . . ."

The evidence before the trial court as to the Foxfire Village Council's method of assessment consisted of the following: the mayor testified that the Village Council decided that if a lot had an operating well on it on 1 August 1983, it was to be considered an improved lot; otherwise it was considered unimproved. One of the considerations used in determining the amount of assessment to an unimproved lot was the average cost of installing a well and pump, which the council determined to be $2,400.00. Dewitt Purvis, tax supervisor of Moore County, testified that there had been no reappraisal of lots in Foxfire since 1979, except where a new home had been built. According to county standards, value of a lot would be enhanced by $1,400.00 by the addition of a well, or by $2,300.00 by the addition of a well and septic tank. He also testified that the Council decided 5% of the amount of the assessment on the unimproved lots, $2,400.00, would be the fair assessment of the improved lots, i.e., $120.00; and that these assessment figures were fair. A council member testified that the council considered that there would only be a nominal increase in the value of lots that already had a well, and considered $120.00 to be a nominal assessment. There were no appraisals made of improved lots, nor consideration of the value of a particular lot, before ar-

riving at the amount of the assessment. "In our opinion, water available to a $10,000 lot was worth the same as water available to a $20,000 lot. We also decided that $2,400 was a fair amount of assessment to a lot for installation of the water system, whether or not the lot was worth $10,000 or $20,000." The supervisor of real estate appraisal for the North Carolina Department of Revenue testified that in his opinion the assessments on the improved and unimproved lots were "fair and reasonable," and, although the value added assessment method contemplates appraisals before and after the improvement, a general appraisal is sufficient, and appraisal of individual lots to determine increased value is unnecessary. This evidence does not support the trial court's "Findings of Ultimate Facts" that the assessments were the "value added" to the lots "according to the appraisal standards and rules adopted by Moore County at its last revaluation."

Where, as here, the language of a statute is clear and unambiguous, there can be no judicial construction and the courts must give the statute its plain and definite meaning as adopted by the legislature. *In re Banks*, 295 N.C. 236, 244 S.E. 2d 386 (1978). "In such cases courts are without power to interpolate or superimpose provisions or limitations not contained in the statute." *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E. 2d 442, 445 (1983). The statute clearly prescribes a before and after improvement appraisal of the property with the assessment based on a set rate per dollar of value added to the land served by the water system construction, an amount which may necessarily vary due to the nature of the individual lots themselves. This the Village of Foxfire has failed to do. Rather, the Foxfire Village Council simply calculated the average value of the improvement to all unimproved lots, established a nominal percentage thereof as the increase in value to improved lots, and thereby arrived at the amount of value added to the property. No "appraised value of the land with improvements according to appraisal standards adopted by the county" was established. The method used by the Village of Foxfire to determine the amount of value added to the individual lots was not a method sanctioned by G.S. 160A-218(3). Therefore, we reverse the order of the trial court dismissing plaintiffs' petition for reassessment and remand the cause to the District Court of Moore County for entry of an order requiring the Foxfire Village Council to determine the amounts of assess-

ments for water improvements in accordance with the provisions of G.S. 160A-218.

Reversed and remanded.

Chief Judge HEDRICK and Judge WELLS concur.