IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-2

No. 99A20

Filed 5 February 2021

IN THE MATTER OF: J.E.B., II

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order terminating respondent's parental rights entered on 21 October 2019 by Judge John K. Greenlee in District Court, Gaston County. Heard in the Supreme Court on 11 January 2021.

> *Elizabeth Myrick Boone for petitioner-appellee Gaston County Department of Health and Human Services.*
>
> *Brian C. Bernhardt for appellee Guardian ad Litem.*
>
> *Garron T. Michael for respondent-appellant mother.*

EARLS, Justice.

¶ 1   Respondent-mother appeals from an order entered by Judge John K. Greenlee in District Court, Gaston County, on 21 October 2019 terminating her parental rights in J.E.B., II (Jason).[1] Respondent argues that she was denied a fundamentally fair termination proceeding because her guardian ad litem conducted examinations of some witnesses and, at one point, presented legal arguments on respondent's behalf. In respondent's view, these actions violated N.C.G.S. § 7B-1101.1, which establishes

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

the right of a parent to appointed counsel and, in certain circumstances, to a guardian ad litem in a termination of parental rights proceeding. It further provides that "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." N.C.G.S. § 7B-1101.1(d) (2019). Because the trial court properly appointed respondent a guardian ad litem and an attorney, both of whom carried out appropriate roles in this matter, we conclude the statute was not violated and we affirm the trial court's order.

## I.    Background

Jason was placed in the temporary nonsecure custody of the Gaston County Department of Health and Human Services, Division of Social Services (DSS) on 22 November 2017 following a forensic interview during which Jason disclosed that he had been sexually abused by his father's roommate and physically abused by his father. Prior to that point, both respondent and Jason's father had been involved with DSS as a result of concerns of substance abuse and domestic violence.

On 27 March 2018, the trial court entered an adjudication order placing Jason in the legal custody of DSS. The termination order indicates that, at a disposition hearing on 24 April 2018, the trial court ordered respondent to complete a case plan with the following components:

> a) Refrain from using/abusing all illegal/mind altering substances;
>
> b) Complete an updated Mental Health and Substance

        Abuse Assessment;

c) Follow any recommendations from the Mental Health and Substance Abuse Assessments;

d) Submit to drug screens as requested;

e) Complete parenting classes;

f) Obtain and maintain safe, appropriate, and stable housing;

g) Obtain a Psychological Assessment;

h) Attend visitations with the juvenile, demonstrate effective parenting skills and display appropriate communication skills in presence of the juvenile;

i) Sign all consents necessary;

j) Refrain from any criminal activity.

The trial court subsequently found that Respondent failed to enter into a case plan, despite being ordered to do so by the court. The trial court changed Jason's primary permanent plan from reunification to adoption in an order filed 9 November 2018, following a hearing on 16 October 2018. Respondent was ultimately served with a termination petition alleging that Jason was a neglected juvenile, that respondent had willfully left Jason in foster care for more than twelve months without making reasonable progress to correct the circumstances that led to his removal from the home, and that respondent was incapable of properly caring for Jason.

¶ 4      At the beginning of the termination proceeding, respondent's appointed attorney, Mr. Kakassy, unsuccessfully attempted to withdraw on the basis of

noncooperation, indicating that he had been unable to communicate with respondent and that she did not wish him to continue representing her. The court denied Mr. Kakassy's request to withdraw. In doing so, the court stated the following:

> All right. [Respondent,] Mr. Kakassy has been on your underlying case for some period of time, was appointed on this in June. He is very familiar with your case and your situation. You have a Guardian Ad Litem that's been appointed, Mr. Hargett. Both are fully capable, professional attorneys to assist you in this and are fully capable of doing that. So, any motion to have a new attorney appointed or release Mr. Kakassy is denied.

Later, Mr. Kakassy again protested that he would have difficulty proceeding and the trial court stated that Mr. Hargett, respondent's guardian ad litem, was "welcome to ask questions and examine [respondent]" and stated that the group—Mr. Kakassy, Mr. Hargett, and respondent—could determine among themselves what strategy to use to present evidence.

¶ 5    During the proceeding, Mr. Kakassy and Mr. Hargett worked together to represent respondent. At various points, Mr. Hargett cross-examined witnesses, including respondent. At various points, Mr. Kakassy objected on respondent's behalf. At the end of the adjudication stage of the proceeding, Mr. Kakassy requested that DSS dismiss the dependency ground for termination of respondent's parental rights and Mr. Hargett argued on respondent's behalf regarding the remaining two grounds. During the best interests phase of the proceeding, Mr. Kakassy conducted the direct examination of respondent's only witness.

¶ 6    In an order entered on 21 October 2019, the trial court determined that grounds existed to terminate respondent's parental rights with respect to Jason. Respondent filed the instant appeal and argued that Mr. Hargett's actions violated a statutory mandate that a parent's guardian ad litem "shall not act as the parent's attorney." *See* N.C.G.S. § 7B-1101.1(d). Respondent also asserts in the alternative that, if we do not reverse the termination order on that basis, she received ineffective assistance of counsel. On a motion filed by DSS, respondent's original appeal was dismissed by order of this Court on 7 May 2020. We allowed respondent's petition for a writ of certiorari by order on the same date.

## II.    Standard of Review

¶ 7    Generally, when this Court reviews a trial court's order terminating parental rights, we review "to determine whether the trial court made sufficient factual findings to support its ultimate findings of fact and conclusions of law, regardless of how they are classified in the order." *In re Z.A.M.*, 374 N.C. 88, 97, 839 S.E.2d 792, 798 (2020). Factual findings are sufficient if they "are supported by clear, cogent and convincing evidence" in the record. *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984). Here, respondent raises a question of statutory interpretation, which we review de novo. *Town of Pinebluff v. Moore Cnty.*, 374 N.C. 254, 255–56, 839 S.E.2d 833, 834 (2020) (citing *Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d 776, 779 (2013)).

### III. Analysis

¶ 8 Respondent raises two arguments on appeal. First, she argues that she was denied a fundamentally fair termination proceeding because her appointed guardian ad litem acted as her attorney. In the alternative, she argues that her appointed counsel provided ineffective assistance. We address each argument in turn.

### A. Guardian ad litem

¶ 9 In a hearing to determine the termination of parental rights, "[t]he parent has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right." N.C.G.S. § 7B-1101.1(a). In certain circumstances, the parent may also be appointed a guardian ad litem. N.C.G.S. § 7B-1101.1(b)–(c). If a guardian ad litem is appointed for the parent, "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." N.C.G.S. § 7B-1101.1(d). Respondent urges us to interpret subsection (d) to mean that a guardian ad litem shall not perform the functions of an attorney, so that the statute is violated where a guardian ad litem conducts examinations or performs similar acts. DSS, on the other hand, argues that the statute merely precludes one person from being appointed both as a parent's counsel and as a parent's guardian ad litem.

¶ 10 A parent whose rights are considered in a termination of parental rights proceeding must be provided "with fundamentally fair procedures" consistent with

the Due Process Clause of the Fourteenth Amendment. *In re Murphy*, 105 N.C. App. 651, 653, 414 S.E.2d 396, 397 (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 1395 (1982)), *aff'd per curiam*, 332 N.C. 663, 422 S.E.2d 577 (1992). Respondent argues that the trial court violated the statute and rendered the proceeding fundamentally unfair by "permitting [her guardian ad litem] to act in the role of [her] parent attorney throughout the termination proceeding." As a result, we must consider whether the actions of respondent's guardian ad litem amounted to acting as the parent's attorney within the meaning of the statute.

¶ 11        "The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889, 821 S.E.2d 787, 792 (2018). When the meaning is clear from the statute's plain language, we "give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Winkler v. N.C. State Bd. of Plumbing*, 374 N.C. 726, 730, 843 S.E.2d 207, 210 (2020) (citation omitted). However, when the language is ambiguous, we must ascertain the General Assembly's intent. *Id.* "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *Rankin*, 371 N.C. at 889, 821 S.E.2d at 792 (citation omitted). When we are determining legislative intent, "the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of

the statute and which gives effect to the reason and purpose of the statute." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 215, 388 S.E.2d 134, 140 (1990).

¶ 12    Here, the statute's text is not ambiguous because the text bears only one meaning. *See Winkler*, 374 N.C. at 732, 843 S.E.2d at 212 (describing an ambiguous statute as one "equally susceptible of multiple interpretations"); *State v. Conley*, 374 N.C. 209, 214, 839 S.E.2d 805, 808 (2020) (concluding that a statute's language is ambiguous because it "could reasonably be construed" in two ways). The statute provides that "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." N.C.G.S. § 7B-1101.1(d). In its preceding subsections, the statute establishes a parent's right to counsel and provides for the appointment of a guardian ad litem in certain circumstances. N.C.G.S. § 7B-1101.1(a)–(c). It is clear to us, reading the language in context, that the statutory mandate of subsection 7B-1101.1(d) that "[t]he parent's counsel shall not be appointed" as the guardian ad litem and that "the guardian ad litem shall not act" as the parent's attorney requires that the parent's counsel and the parent's guardian ad litem not be the same person so that the respondent parent

receives the benefit of both.[2] It does not, as respondent suggests, prevent a guardian ad litem from conducting cross-examinations or presenting an argument directly to the trial court.

¶ 13    In urging the opposite result, respondent focuses, as does the dissent, on the phrase "act as the parent's attorney" to the exclusion of the rest of the statute. "However, this Court does not read segments of a statute in isolation." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004). We similarly do not read portions of a sentence in isolation. The statute's statement that the guardian ad litem "shall not act" as the parent's attorney has the same function in the statute as the similar phrase, appearing in the same sentence, that the parent's attorney "shall not be appointed" as the guardian ad litem. The two parts of the sentence mirror each other to fulfill the statute's dual purposes—ensuring a parent's right to counsel and providing those in need with a guardian ad litem. The provision of a guardian ad litem does not satisfy the statute's mandate of the parent's right to counsel just as the provision of counsel does not satisfy the statute's mandate for a guardian ad litem when a parent requires one. If the General Assembly had intended a different

_____

[2] While there is no need to resort to the history of the statute to interpret its meaning here, it is worth noting that this provision was adopted in 2005 after concerns were expressed about potential conflicts of interest if the same person were to serve simultaneously in both roles for a parent. *See In re K.L.S.*, 635 S.E.2d 536, 2006 N.C. App. LEXIS 2128, at *12 (2006) (unpublished) (stating that effect of N.C.G.S. § 7B-1101.1 (2005) was to prevent the trial court from appointing the same person as both a parent's attorney and guardian ad litem). The history of its enactment further supports our understanding of the statute's plain meaning.

meaning it would have used different language. For example, the General Assembly could have, but did not, prohibit a guardian ad litem from "furnishing the services of a lawyer or lawyers" on behalf of a parent in a termination of parental rights proceeding. *See* N.C.G.S. § 84-4 (prohibiting persons not licensed as attorneys from holding themselves out as competent to "furnish[ ] the services of a lawyer or lawyers" and prohibiting such persons from "perform[ing] for or furnish[ing] to another legal services"). Instead, the General Assembly stated that the guardian ad litem "shall not act as the parent's attorney" in the same sentence that it stated that the parent's attorney "shall not be appointed to serve as the guardian ad litem." N.C.G.S. § 7B-1101.1(d).

¶ 14    In the instant case, the proceedings did not violate the statute. A thorough review of the record reveals that respondent's counsel maintained control of the respondent's case, actively made strategic decisions regarding how best to protect respondent's interests, and served as respondent's counsel throughout the proceeding. For example, Mr. Kakassy, respondent's appointed attorney, began the proceeding by informing the trial court that respondent did not want him to represent her and that she preferred a different appointed attorney. The trial court denied his request to withdraw, further demonstrating that all present recognized that Mr. Kakassy was respondent's attorney and that Mr. Kakassy was acting in that capacity throughout the proceeding. At appropriate times, Mr. Kakassy objected on

respondent's behalf. After DSS closed its case-in-chief regarding the existence of grounds for termination, it was Mr. Kakassy who informed the trial court that respondent had no further witnesses for that portion of the proceeding. When the time came for legal arguments on the existence of grounds for termination, Mr. Kakassy directed the argument, first securing the dismissal of one ground for termination and informing the trial court that Mr. Hargett would present an argument on the remaining two grounds. During the best interests phase of the proceeding, Mr. Kakassy controlled the presentation of evidence for respondent and conducted the direct examination of respondent's only witness. When Mr. Hargett examined witnesses or otherwise performed trial functions, the transcript reveals that he did so either at the express direction of or in apparent coordination with Mr. Kakassy. Where, as here, respondent's appointed attorney did not functionally abdicate his responsibilities, leaving the guardian ad litem to "act as the parent's attorney" in the absence of the parent's actual legal counsel, there is no violation of N.C.G.S. § 7B-1101.1(d).

## B. Ineffective assistance of counsel

Respondent briefly argues, in the alternative, that she was denied effective assistance of counsel because Mr. Kakassy was not sufficiently involved in the proceeding. For the same reasons that we have rejected respondent's argument pursuant to N.C.G.S. § 7B-1101.1(d), we also reject this argument. The record reflects

that, far from being uninvolved, Mr. Kakassy was engaged throughout the proceeding and utilized the assistance of Mr. Hargett, who is also an attorney, to better serve respondent. While respondent also claims that Mr. Hargett was unprepared to assist Mr. Kakassy, her claim is unsupported by the record.

## IV. Conclusion

The parent in a termination of parental rights proceeding has a right to counsel. N.C.G.S. § 7B-1101.1(a). When that parent also qualifies for representation by a guardian ad litem, the parent must be able to receive the benefit of both counsel and the guardian ad litem. To this end, the statute makes clear that the same person may not serve in both roles. N.C.G.S. § 7B-1101.1(d). However, where a parent has been afforded both an attorney and a guardian ad litem, the statute is not violated where, as here, the parent's counsel acts as the parent's attorney and the guardian ad litem assists counsel in the presentation of the case to ensure that the parent is effectively represented. Respondent has not shown that the proceeding below was fundamentally unfair. Accordingly, we affirm the trial court's order terminating respondent's parental rights in Jason.

AFFIRMED.

Justice MORGAN dissenting.

I respectfully disagree with my distinguished colleagues of the majority upon their arrival at the unfortunate conclusion in this case which manifests their startling willingness to forsake the most fundamental tenet of statutory construction: assigning to words their plain and simple meaning. I sharply disagree with the majority's stunning departure from this bedrock of statutory interpretation which is exacerbated by the circuitous approach employed by my fellow justices to justify this deviation. In construing the clear words of the statutory provision at issue in a direct and appropriate manner, I would conclude that the trial court erred in its interpretation of subsection 7B-1101.1(d) of the General Statutes of North Carolina—the statutory provision at issue in the present case—which constituted a violation of the statute, causing sufficient prejudice to respondent-mother so as to warrant the vacation of the trial court's order and a remand to the trial court for a new termination of parental rights hearing.

The first sentence of N.C.G.S. § 7B-1101.1(d) reads as follows: "The parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." N.C.G.S. § 7B-1101.1(d) (2019). In understanding a court's proper role in the accurate interpretation of our Legislature's statutory enactments, this Court stated in its decision in *Brown v. Flowe* that

> [t]o determine legislative intent, a court must analyze the

> statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish. First among these considerations, however, is the plain meaning of the words chosen by the legislature; if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings. The Court's analysis therefore properly begins with the words themselves.

349 N.C. 520, 522, 507 S.E.2d 894, 895–96 (1998) (citations omitted).

¶ 19 "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988).

¶ 20 In applying the general standards of accurate statutory construction which are specified in *Brown* to the entirety of N.C.G.S. § 7B-1101.1, it is apparent that the intent of the Legislature was to afford a parent whose parental rights were subject to termination with the right to an attorney, with the opportunity for the trial court's appointment of a guardian ad litem for a parent who is deemed to be incompetent, with the fees of these two separate persons to be borne by the Office of Indigent Defense Services upon a determination by the court that the parent is indigent. *See* N.C.G.S. § 7B-1101.1(a)–(f). The objectives of N.C.G.S. § 7B-1101.1 involve the provision of persons to the parent to separately represent the parent's legal interests and the parent's special individualized interests, with a permeating spirit of the

fullness of the protection of the rights of a mother or a father whose parental rights to a child or to children are in peril of being terminated.

¶ 21    Consistent with this identification and analysis of its companion subsections, N.C.G.S. § 7B-1101.1(d) is indicative of the accomplishment of the same objectives and representative of the same spirit when considering the Legislature's selection of the particular words "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." N.C.G.S. § 7B-1101.1(d). Just as with the other provisions of N.C.G.S. § 7B-1101.1, in analyzing the statute as a whole as mandated by our decision in *Brown*, subsection (d) evinces an expectation in its plain and simple language that the parent's counsel will represent the parent's legal interests, the parent's guardian ad litem will represent the parent's special individualized interests, and such a demarcation of authority and responsibility is clear for the two separate persons from the Legislature's clear and direct language.

¶ 22    It is obvious to me in the instant case that respondent-mother's counsel Mr. Kakassy was not appointed to serve as her guardian ad litem; consequently, there is compliance with N.C.G.S. § 7B-1101.1(d) by the trial court. It is also obvious to me in the instant case—as it is to the Court members in the majority as well—that respondent-mother's guardian ad litem, Mr. Hargett, acted as her attorney; consequently, in my view, there is a violation of N.C.G.S. § 7B-1101.1(d) by the trial

court. During the termination of parental rights hearing, the record shows that respondent-mother's guardian ad litem conducted five of the six examinations of witnesses on behalf of respondent-mother and made legal arguments to the trial court in his capacity as a licensed attorney. The majority opinion itself acknowledges that (1) "[a]t various points, Mr. Hargett cross-examined witnesses, including respondent" and (2) "Mr. Hargett argued on respondent's behalf regarding the remaining two grounds [for termination of parental rights]."

¶ 23        Unequivocally, the examination of witnesses and the rendition of legal arguments on the record in a court of general jurisdiction in the State of North Carolina constitutes the actions of an attorney. In the present case, since the guardian ad litem for respondent-mother, at a minimum, performed these acts attributable to an attorney in the course of a termination of parental rights hearing. I would conclude that the trial court violated the mandate of N.C.G.S. § 7B-1101.1(d) that "the guardian ad litem shall not act as the parent's attorney." In applying the well-established principles of statutory construction generally articulated in *Brown* and specifically addressed in *Lemons* with regard to clear and unambiguous language, the analysis of N.C.G.S. § 7B-1101.1 as a whole, the chosen words of the Legislature throughout N.C.G.S. § 7B-1101.1 including subsection (d), the spirit of the statute, and the objectives that N.C.G.S. § 7B-1101.1 seeks to accomplish, I am compelled to dissent from the majority's view as to its interpretation of N.C.G.S. §

7B-1101.1(d) with respect to the application of this statutory provision in the present case and the conclusion ultimately reached by the majority to affirm the trial court's order which terminated respondent-mother's parental rights.

¶ 24        I agree with the majority that the text of N.C.G.S. § 7B-1101.1(d) "is not ambiguous because the text bears only one meaning." I also concur with the majority that this statutory provision "requires that the parent's counsel and the parent's guardian ad litem not be the same person so that the respondent parent receives the benefit of both." However, the majority's correct identification of these important premises becomes eroded by the majority's faulty assumptions and approaches which are built upon these premises.

¶ 25        At the outset of its opinion, the majority summarized its conclusion that "the statute was not violated and we affirm the trial court's order" because "the trial court properly appointed respondent a guardian ad litem and an attorney, both of whom carried out appropriate roles in this matter." The majority erroneously presumes that the trial court's appointment of one person as the parent's counsel and another person as the parent's guardian ad litem comports with N.C.G.S. § 7B-1101.1(d), so long as the counsel is performing legal responsibilities and the guardian ad litem is performing the responsibilities of the guardian ad litem. I concede that each person was performing his assigned statutory responsibilities; however, the guardian ad litem was acting as the parent's attorney *in addition to* performing his

responsibilities as the guardian ad litem, and as stated by the majority, the statutory language of N.C.G.S. § 7B-1101.1(d) "is not ambiguous because the text bears only one meaning," to wit: the guardian ad litem shall not act as the parent's attorney. In an effort to blunt the effect of the plain and simple meaning of the statute's express prohibition against the guardian ad litem's ability to act as the parent's attorney, the majority discerns "that respondent's counsel maintained control of the respondent's case, actively made strategic decisions regarding how best to protect respondent's interests, and served as respondent's counsel throughout the proceeding." Even assuming *arguendo* that this depiction is true, the trial court's allowance of the guardian ad litem to become a second attorney for the parent in the performance of legal responsibilities during the hearing, despite the ongoing status of respondent-mother's appointed counsel as the parent's attorney of record, contravenes the provision of N.C.G.S. § 7B-1101.1(d) that "the guardian ad litem shall not act as the parent's attorney." "It is well established that the word 'shall' is generally imperative or mandatory when used in our statutes." *Morningstar Marinas/Eaton Ferry, LLC v. Warren Cnty.*, 368 N.C. 360, 365, 777 S.E.2d 733, 737 (2015) (extraneity omitted).

¶ 26        The majority compounds its inconsistent statutory construction of the first sentence of N.C.G.S. § 7B-1101.1(d) in its endeavor to validate the guardian ad litem's sanctioned ability to engage in, as the majority states, "conducting cross-examinations or presenting an argument directly to the trial court" by equating the

first phrase of the sentence that "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem" with the second phrase of the sentence that "the guardian ad litem shall not act as the parent's attorney." The majority opines that "[t]he two parts of the sentence mirror each other to fulfill the statute's dual purposes—ensuring a parent's right to counsel and providing those in need with a guardian ad litem." While this statutory construction of the first sentence of N.C.G.S. § 7B-1101.1(d) represents another glimmer of the majority's occasional remembrances and applications in this case of the principles of statutory construction which this Court has espoused in *Brown*, *Lemons*, and *Morningstar Marinas*, nonetheless the repeated inconsistencies of the majority's statutory construction remain which cause it to reiterate that the guardian ad litem here was allowed to conduct cross-examinations and present arguments directly to the trial court, despite the "mirror" images of the two phrases in the first sentence of N.C.G.S. § 7B-1101.1(d) that include the proscription that "the guardian ad litem shall not act as the parent's attorney."

¶ 27        A final approach which the majority has employed to authenticate its concept of statutory construction in the present case is the introduction of inappropriate, extraneous verbiage and considerations which obfuscate the plain and simple meaning of the statutory provision at issue. For example, the majority concludes that "the statute is not violated where, as here, the parent's counsel acts as the parent's attorney and the guardian ad litem assists counsel in the presentation of the case to

ensure that the parent is effectively represented." This recapitulation of N.C.G.S. § 7B-1101.1(d) by the majority more resembles a convenient recast of the clear and direct words of the statutory provision's first sentence, "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney." "It is a well-settled principle of statutory construction that where a statute is intelligible without any additional words, no additional words may be supplied." *State v. Camp*, 286 N.C. 148, 151, 209 S.E.2d 754, 756 (1974). Similarly, the majority adeptly repositions the standard set by the unadulterated directness of the statutory language at issue by restating it as follows: "[w]here, as here, respondent's appointed attorney did not functionally abdicate his responsibilities, leaving the guardian ad litem to 'act as the parent's attorney' in the absence of the parent's actual legal counsel, there is no violation of N.C.G.S. § 7B-1101.1(d)." "When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388–89 (1978).

¶ 28        In conclusion, the trial court's statement on the record of the hearing to both respondent-mother's appointed counsel, Mr. Kakassy, and respondent-mother's appointed guardian ad litem, Mr. Hargett, that "y'all are both kind of acting as

counsel for [respondent-mother] today" was a patently obvious recognition by the trial court that Mr. Hargett, albeit serving as the parent's guardian ad litem, was being allowed by the trial court to act as counsel for the parent. In this regard, the trial court violated N.C.G.S. § 7B-1101.1(d) by permitting the guardian ad litem to act as the parent's attorney. Due to my conclusion that the trial court's error was sufficiently prejudicial to respondent-mother so as to warrant the vacation of the trial court's order terminating respondent-mother's parental rights and a remand to the trial court for a new termination of parental rights hearing, I would not reach respondent-mother's alternative argument that her appointed attorney rendered ineffective assistance of counsel. In my view, respondent-mother's ability to present her position in the termination hearing was unduly compromised by the trial court's contravention of N.C.G.S. § 7B-1101.1(d), which included the appointed guardian ad litem's inability to fully focus upon his responsibilities as contemplated by the plain and simple words of the statute because of the trial court's express authorization for the guardian ad litem to act as the parent's attorney.

¶ 29        In light of the reasons which I have cited and discussed, I respectfully dissent.