STATE OF NORTH CAROLINA v. JAMES LLOYD TYNDALL

No. 8110SC602

(Filed 1 December 1981)

1. Narcotics § 1.3— elements of trafficking in cocaine
       In order to constitute the offense of "trafficking in cocaine," G.S. 90-95(h)(3)(a) requires the sale, manufacture, deliverance, transportation or possession of a mixture of 28 grams or more of a substance containing cocaine and does not require that the mixture contain 28 grams or more of cocaine. Therefore, defendant could be convicted of trafficking in cocaine where the evidence tended to show that defendant sold an undercover agent a powdery mixture weighing 37.1 grams and that 5.565 grams of that mixture were cocaine.

2. Narcotics § 2— trafficking in cocaine—no fatal variance between indictment and proof
       There was no fatal variance between an indictment charging defendant with feloniously selling 28 grams or more but less than 200 grams of the controlled substance cocaine to a named person on a particular date in violation of G.S. 90-95(h)(3)(a) and proof that defendant sold a powdery mixture weighing 37.1 grams but containing only 5.565 grams of cocaine.

State v. Tyndall

3. **Criminal Law §§ 23, 91— rejection of plea bargain by judge—right to continuance**

Where defendant and the State entered into a plea bargain arrangement on the morning defendant's trial was to begin, and the trial judge informed the parties prior to jury selection that he was rejecting the plea arrangement, the trial judge erred in denying defendant's oral motion for a continuance, since G.S. 15A-1023(b) provided defendant with a continuance as a matter of right.

APPEAL by defendant from *Godwin, Judge*. Judgment entered 26 March 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 17 November 1981.

Defendant was convicted of feloniously trafficking in cocaine in violation of G.S. 90-95(h)(3)(a). Judgment imposing a prison sentence was entered.

The evidence tends to show the following. On 19 August 1980, an undercover agent of the North Carolina State Bureau of Investigation entered a grocery store in Raleigh and walked back to the meat department. He rang the bell there and asked to speak to "J. L." Defendant identified himself as that individual. The agent then asked defendant "where he would like to do the deal."

Defendant led him through the freezer area of the store and into a bathroom. The agent asked defendant what price he wanted for 1.5 ounces of cocaine. He replied, "$3,200.00." The agent then gave defendant $3,200.00 in special funds and asked defendant where the cocaine was located. Defendant told him it was wrapped in a towel, lying on the passenger floorboard of his white Cutlass.

Once defendant explained where his automobile was parked, the agent walked outside to it and removed the towel. Inside the towel was a plastic bag containing another plastic bag of white powder.

Tests were later performed which determined the total weight of the white powder to be 37.1 grams. Of the 37.1 grams, 5.565 grams were cocaine. The rest of the mixture was noncontrolled substance.

At the close of the State's evidence, the defendant moved to have the charges against him dismissed. The motion was denied.

A jury found defendant guilty of violating G.S. 90-95(h)(3)(a). He received a five-year sentence, six months of which he was to serve in prison and the remainder on probation. He was also ordered to pay a $1,000.00 fine. The trial judge later reinterpreted the sentencing provisions of G.S. 90-95(h)(3)(a) and resentenced defendant under its mandatory provisions to three to five years imprisonment and a fine of $50,000.00.

*Attorney General Edmisten, by Assistant Attorney General Norma S. Harrell, for the State.*

*Dement, Redwine, Askew and Gaskins, by Johnny S. Gaskins, for defendant appellant.*

VAUGHN, Judge.

[1] At issue is the construction of G.S. 90-95(h)(3)(a). Defendant contends that the provision does not prohibit the sale of a mixture unless that mixture contains 28 grams of cocaine. We disagree.

Article 5 of Chapter 90 is the North Carolina Controlled Substances Act. It was amended in 1979 to include G.S. 90-95(h). Prior to that time, G.S. 90-95(a) made it unlawful to manufacture, sell or deliver, or possess with the intent to manufacture, sell, or deliver, a controlled substance. G.S. 90-95(h) added penalties for "trafficking" in certain type controlled substances. The present defendant was indicted under G.S. 90-95(h)(3)(a). It states the following:

> "(3) Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of coca leaves or any salts, compound, derivative, or preparation thereof which is chemically equivalent or identical to any of these substances (except decocainized coca leaves or any extraction of coca leaves which does not contain cocaine or ecgonine) or any mixture containing any such substance, shall be guilty of a felony which felony shall be known as 'trafficking in cocaine' and if the quantity of such substances or mixture involved:
>
> a. Is 28 grams or more, but less than 200 grams, such person shall, upon conviction, be punished by imprisonment for not less than three years nor more than 10 years in the

State's prison and shall be fined not less than fifty thousand dollars ($50,000). . . ."

The evidence shows that defendant sold an undercover agent a powdery mixture weighing 37.1 grams. Of that mixture, 5.565 grams were cocaine. The remainder consisted of noncontrolled substances. Defendant argues that since he did not deliver 28 grams or more of cocaine, he cannot be guilty of violating G.S. 90-95(h)(3)(a). At most, the evidence supports a conviction for unlawful possession and sale under G.S. 90-95(a)(1).

To so conclude, defendant focuses on the statute's phrase "any mixture containing any such substance." Defendant argues that "such substance" refers to the previously stated "28 grams or more of coca leaves." He, therefore, interprets G.S. 90-95(h)(3)(a) to state that any person who delivers 28 grams or more of cocaine or any mixture *containing 28 grams or more of cocaine* is guilty of the felony of "trafficking in cocaine."

Upon close reading of the statute, we cannot agree with defendant's construction. The remainder of the subsection quoted by defendant provides that "if the quantity of such substances *or mixture* involved is 28 grams or more . . ., such person shall be punished by imprisonment. . . ." (Emphasis added). It appears, therefore, that the quantity of the mixture containing cocaine may be sufficient in itself to constitute a violation of G.S. 90-95 (h)(3)(a).

Defendant persuasively argues that such a construction creates anomalous results. If the amount of cocaine in the mixture is not determinative of a violation of G.S. 90-95(h)(3)(a), then the person who sells 2 grams of cocaine in a mixture of more than 28 grams of noncontrolled substances will receive a harsher penalty than the person who sells 28 grams of pure cocaine and therefore violates the lesser offense of G.S. 90-95(a)(1). The penalty would seem to increase not because the individual sold a greater quantity of cocaine but because he sold a greater amount of a noncontrolled substance.

Defendant, however, overlooks the purpose behind G.S. 90-95 (h)(3)(a) of deterring "trafficking" in controlled substances. Our legislature has determined that certain amounts of controlled substances and certain amounts of mixtures containing controlled

State v. Tyndall

substances indicate an intent to distribute on a large scale. Large scale distribution increases the number of people potentially harmed by use of drugs. The penalties for sales of such amounts, therefore, are harsher than those under G.S. 90-95(a)(1).

We conclude there was sufficient evidence of a violation of G.S. 90-95(h)(3)(a) to charge the jury on such an offense. The mixture defendant sold contained cocaine and weighed more than 28 grams but less than 200 grams. Defendant's motion to dismiss was, therefore, properly overruled. We also conclude the judge properly instructed the jury as to the elements of "trafficking in cocaine":

> "The Court instructs you that if you find from the evidence and beyond a reasonable doubt that the white powdery substance weighed more than 28 grams, to wit, 37.1 grams, and that it contained cocaine, and that the defendant . . . sold it . . . for $3,200.00; then you would return a verdict of guilty as charged.

> You are not to concern yourselves with whether the 37.1 grams of white powdery substance contained anything more than cocaine, the amount of pure cocaine, which according to the testimony of the chemist was only 15% of the total of 37.1. . . ."

Because the defendant was properly convicted by the jury of the offense of trafficking in cocaine under the court's instructions, the later sentence imposed was also without error.

[2] Defendant finally raises the question of a variance between the indictment against him and the proof offered. He states that the indictment charged him with feloniously selling 28 grams or more, but less than 200 grams, of the controlled substance cocaine in violation of G.S. 90-95(h)(3)(a). The evidence, however, is that defendant sold a mixture weighing 28 grams or more, only 5.565 grams of which were cocaine.

A fatal variance between the allegations of the indictment and the proof is properly raised by a motion to dismiss. *State v. Blackburn*, 34 N.C. App. 683, 239 S.E. 2d 626 (1977), *cert. denied*, 294 N.C. 442, 241 S.E. 2d 522 (1978). Not every variance, however, is sufficient to require a motion to dismiss. *State v. Furr*, 292 N.C.

711, 235 S.E. 2d 193, *cert. denied*, 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed. 2d 281 (1977).

The present indictment alleged the particular subsection of G.S. 90-95 upon which the State relied. It alleged the date of the sale and the purchaser. Although the indictment stated defendant sold 28 grams of cocaine rather than 28 grams of a mixture containing cocaine, defendant cannot claim that the variance hampered his preparation of an adequate defense. *See generally United States v. Holt*, 529 F. 2d 981 (4th Cir. 1975); *State v. Bailey*, 49 N.C. App. 377, 271 S.E. 2d 752 (1980), *cert. denied*, 301 N.C. 884, 276 S.E. 2d 288 (1981). At trial, he strongly argued his present contention that G.S. 90-95(h)(3)(a) does not cover the sale of a mixture containing less than 28 grams of cocaine. We hold that in this case, the variance was not fatal.

[3] Notwithstanding the foregoing, a violation of G.S. 15A-1023(b) makes it necessary that there be a new trial. That provision, amended in 1977, reads as follows:

> "(b) Before accepting a plea pursuant to a plea arrangement in which the prosecutor has agreed to recommend a particular sentence, the judge must advise the parties whether he approves the arrangement and will dispose of the case accordingly. If the judge rejects the arrangement, he must so inform the parties, refuse to accept the defendant's plea of guilty or no contest, and advise the defendant personally that neither the State nor the defendant is bound by the rejected arrangement. The judge must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly. Upon rejection of the plea arrangement by the judge the defendant is entitled to a continuance until the next session of court. A decision by the judge disapproving a plea arrangement is not subject to appeal."

Prior to the amendment, a defendant in North Carolina had the right to a continuance only if the judge, at the time of sentencing, determined to impose a sentence other than the one provided for in the negotiated plea arrangement. The defendant did not have a continuance as a matter of right if the judge rejected the negotiated plea arrangement prior to trial. *State v. Williams*, 291 N.C. 442, 230 S.E. 2d 515 (1976). By adding the fourth

sentence of G.S. 15A-1023(b), the legislature has clearly granted to the defendant such an absolute right upon rejection of a proposed plea agreement at arraignment.

The defendant and State in this action entered into a plea bargain arrangement on the morning defendant's trial was to begin. Both parties have stipulated on appeal that prior to jury selection, the trial judge informed the parties he was rejecting the plea arrangement. Defendant's attorney made an oral motion for a continuance, but it was denied.

G.S. 15A-1023(b) provided defendant with a continuance as a matter of right. The court, therefore, committed prejudicial error in denying his motion for which defendant is entitled to a new trial.

New trial.

Judges WEBB and HILL concur.