IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-192

Filed 18 June 2024

McDowell County, Nos. 18 CRS 51386-7

STATE OF NORTH CAROLINA

v.

KIMBERLY CABLE, Defendant.

Appeal by Defendant from judgment entered 26 April 2022 by Judge Marvin P. Pope, Jr., in McDowell County Superior Court. Heard in the Court of Appeals 15 November 2023.

> *Attorney General Joshua H. Stein, by Solicitor General Ryan Y. Park, Solicitor General Fellow Mary Elizabeth D. Reed, and Special Deputy Attorney General Zachary K. Dunn, for the State.*
>
> *Thomas, Ferguson & Beskind, LLP, by Olivia Warren, for Defendant.*

GRIFFIN, Judge.

Defendant Kimberly Cable appeals from judgment entered after a bench trial in which she was convicted of two counts of failure to store a firearm to protect a minor, under N.C. Gen. Stat. § 14-315.1, and involuntary manslaughter, under N.C. Gen. Stat. § 14-18. Defendant contends the trial court erred in denying her motion to dismiss as there was insufficient evidence to sustain her convictions. We hold the trial court erred in denying Defendant's motion to dismiss as to both counts of failure to store a firearm to protect a minor. Therefore, we reverse Defendant's convictions

for failure to store a firearm to protect a minor in violation of N.C. Gen. Stat. § 14-315.1 and vacate Defendant's conviction for involuntary manslaughter in violation of N.C. Gen. Stat. § 14-18.[1]

## I.  Factual and Procedural Background

This case arises from a tragic incident in which a sixteen-year-old boy, Kevin, died from a self-inflicted gunshot wound while visiting Defendant's sixteen-year-old son, Wyatt, at their family home.[2]  Evidence at trial tended to show the following:

On 27 July 2018, Wyatt invited Kevin to spend the night at his home. Defendant was home and aware of the boys' presence.  Defendant had an unloaded, holstered Taurus Raging Bull .44 Magnum revolver and a box of ammunition lying on top of an open gun safe in her bedroom.  At around 2:00 a.m., Wyatt went into Defendant's bedroom where Defendant was sleeping with her husband and retrieved the revolver and the box of ammunition.  Wyatt took the revolver to his bedroom to show Kevin.  After showing Kevin the revolver, Wyatt placed the revolver and the box of ammunition on top of a gun safe located in his bedroom.

Some time later, Kevin asked Wyatt if he wanted to play Russian roulette. Kevin then took the revolver and a bullet from the top of the safe in Wyatt's room,

---

[1] We recognize, in addition to Defendant's contentions regarding the sufficiency of the State's evidence, Defendant also argues N.C. Gen. Stat. § 14-315.1 unconstitutionally burdens the right to keep and bear arms.  However, because we reverse Defendant's convictions, we need not address the constitutionality of the statute.

[2] We use pseudonyms to protect the identity of the juveniles.  *See* N.C. R. App. P. 42(b).

loaded the revolver, pointed it at his head, and pulled the trigger. Kevin died instantly. Police responded to the incident and discovered, among other things, 57 additional firearms located throughout Defendant's home.

On 18 September 2018, Defendant was indicted on two counts of failure to store a firearm to protect a minor—Count I pertaining to the revolver and Count II pertaining to the other firearms located throughout the home—and involuntary manslaughter.

On 25 April 2022, the matter came on for trial in McDowell County Superior Court. Defendant waived her right to a jury trial and proceeded with a bench trial before Judge Pope, who found Defendant guilty on all counts. Defendant gave oral notice of appeal. Defendant was sentenced to a consolidated term of 13 to 25 months' imprisonment. The active sentence was suspended for 36 months' supervised probation. Defendant attempted to clarify the trial court had received her notice of appeal. Defendant then requested the trial court arrest judgment on Count I of failure to store a firearm to protect a minor as it was the unlawful act which supported the involuntary manslaughter conviction. The trial court agreed and modified the judgment.

## II.    Jurisdiction and Preservation

Defendant filed a petition for writ of certiorari requesting this Court allow her direct appeal from the trial court's judgment entered 26 April 2022. Defendant concedes she prematurely entered oral notice of appeal before entry of the final

judgment in violation of Rule 4, thereby depriving this Court of jurisdiction to hear her appeal. *See* N.C. R. App. P. 4; *see also State v. Smith*, ___ N.C. App. ___, ___, 898 S.E.2d 909, 912 (2024).

Through Rule 21, "[t]his Court may issue a writ of certiorari 'in appropriate circumstances . . . to permit review of the judgments [. . .] when the right to prosecute an appeal has been lost by failure to take timely action[.]'" *Smith*, ___ N.C. App. at ___, 898 S.E.2d at 912 (quoting N.C. R. App. P. 21(a)(1)).

In the exercise of our discretion, we grant Defendant's petition for writ of certiorari in order to reach the merits of her appeal. However, even where we grant Defendant's petition to reach the merits of her appeal, we are generally precluded from addressing contentions not properly preserved for appellate review, such as Defendant's contentions regarding her involuntary manslaughter conviction.

Our North Carolina Rules for Appellate Procedure, Rule 10(a)(3), prescribes the specific procedure necessary to preserve a sufficiency of the evidence issue for appellate review. *See* N.C. R. App. P. 10(a)(3). Under Rule 10(a)(3), a defendant in a criminal case may not make insufficiency of the State's evidence the basis of an issue on appeal unless she made a motion to dismiss at trial. *Id.* Where the defendant makes a general motion to dismiss for insufficient evidence, the motion "preserves all sufficiency of the evidence issues for appellate review." *State v. Golder*, 374 N.C. 238, 245, 839 S.E.2d 782, 787 (2020). But, where the defendant makes a motion to dismiss for insufficient evidence referencing a specific charge, the motion only preserves

issues relating to that charge. *See State v. Gettleman*, 275 N.C. App. 260, 270, 853 S.E.2d 447, 454 (2020) ("[T]argeted motions to dismiss certain charges cannot preserve issues concerning the sufficiency of the evidence regarding the charges that the defendant deliberately chose not to move to dismiss.").

Here, Defendant made a targeted motion to dismiss for insufficient evidence, stating: "[Y]our Honor, [ ] we would ask you dismiss the failure to secure a firearm." Further, Defendant's arguments on the motion referred only to the insufficiency of the evidence concerning the charge for failure to secure a firearm to protect a minor. Presumably, these arguments would mirror or overlap potential arguments on a motion to dismiss the involuntary manslaughter charge, had they been made. However, the trial court was not required to consider or rule on the sufficiency of the State's evidence as to the involuntary manslaughter charge where Defendant neither mentioned the charge, nor raised any issue or made any specific argument concerning the charge. Because Defendant's targeted motion to dismiss did not require the trial court to consider or rule on the sufficiency of the State's evidence as to the involuntary manslaughter charge, we hold Defendant's motion to dismiss did not preserve any sufficiency of the evidence issue concerning the involuntary manslaughter charge.

Nonetheless, Rule 2 of our North Carolina Rules of Appellate Procedure allows us to suspend or vary the requirements or provisions of Rule 10 where doing so will "prevent manifest injustice to a party, or to expedite decision in the public interest." *See* N.C. R. App. P. 2. The circumstances of this case require we invoke Rule 2 to

suspend Rule 10 and consider the merits of Defendant's argument pertaining to her involuntary manslaughter conviction. Defendant's motion to dismiss otherwise properly preserved any issue concerning the sufficiency of the State's evidence relating to her convictions for failure to store a firearm to protect a minor.

## III. Standard of Review

Whether the State presented substantial evidence of each essential element of the crimes for which Defendant was charged is a question of law. *See State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2017). Thus, we review the trial court's denial of Defendant's motion to dismiss for insufficient evidence de novo to determine whether the State presented substantial evidence of each essential element of the crimes charged and of Defendant having been the perpetrator of those crimes. *Id.; see also State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) ("Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." (internal marks and citation omitted)). In making our determination, we must view all evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

## IV. Analysis

Defendant argues the State failed to offer substantial evidence of each essential element of the crimes charged—two counts of failure to store a firearm to

protect a minor and involuntary manslaughter.

## A. Failure to Store a Firearm to Protect a Minor

Defendant contends the State failed to offer substantial evidence of each essential element of N.C. Gen. Stat. § 14-315.1 under Count I of 18 CRS 51387, which charged Defendant with failure to properly store the Taurus Raging Bull .44 Magnum revolver, and Count II of 18 CRS 51387, which charged Defendant with failure to properly store the other firearms located throughout the home.

Relevant here, North Carolina General Statutes, section 14-315.1 states, in part:

> (a) Any person who resides in the same premises as a minor, owns or possesses a firearm, and stores or leaves the firearm (i) in a condition that the firearm can be discharged and (ii) in a manner that the person knew or should have known that an unsupervised minor would be able to gain access to the firearm, is guilty of a Class 1 misdemeanor if a minor gains access to the firearm without the lawful permission of the minor's parents or a person having charge of the minor and the minor:
>
> . . .
>
> (3) Causes personal injury or death with it not in self defense; or
>
> . . .
>
> (b) Nothing in this section shall prohibit a person from carrying a firearm on his or her body, or placed in such close proximity that it can be used as easily and quickly as if carried on the body.

N.C. Gen. Stat. § 14-315.1(a)-(b) (2023).

### 1. *Count I of 18 CRS 51387*

Defendant contends there was insufficient evidence to sustain her conviction under Count I of 18 CRS 51387, as the State failed to offer substantial evidence to prove she improperly stored the Taurus Raging Bull .44 Magnum revolver, in violation of N.C. Gen. Stat. § 14-315.1. Defendant specifically argues:

> (1) The State did not prove [ ] [Defendant] stored a firearm "in a condition that the firearm can be discharged"[;]
>
> (2) The State did not prove [ ] [Defendant] stored a firearm "in a manner that the person knew or should have known that an unsupervised minor would be able to gain access"[;]
>
> (3) The State did not prove [ ] [Defendant's] firearm was not "placed in such close proximity that it can be used as easily and quickly as if carried on the body"[;] and
>
> (4) The State did not prove [ ] "the minor" who gained access to the revolver possessed or used it in violation of the statute.

In addressing Defendant's first contention we note the undisputed evidence at trial showed, on the date of the incident, Defendant left an unloaded Taurus Raging Bull .44 Magnum revolver in a holster on top of a gun safe in her bedroom. Defendant does not refute this evidence, but instead raises an issue of statutory interpretation. Defendant asserts, under the plain meaning of N.C. Gen. Stat. § 14-315.1, an unloaded gun with a double safety is not in a condition that it can be discharged. Thus, Defendant argues the revolver, here, was not in a condition that it could be discharged because "no amount of handling or even mishandling the [revolver] in the condition in which it was stored would have resulted in intentional or accidental

discharge."

Our Court has addressed this statute once before, in *State v. Lewis*, 222 N.C. App. 747, 732 S.E.2d 589 (2012), but not to the extent this appeal requires. In *Lewis*, the defendant was convicted of improper storage and involuntary manslaughter after his three-year-old son tragically died from a self-inflicted gunshot wound. *Id.* at 748, 732 S.E.2d at 590. The defendant appealed arguing there was not substantial evidence to prove he stored his handgun "in a manner that [he] knew or should have known that an unsupervised minor would be able to gain access to the firearm[.]" *Id.* at 750, 732 S.E.2d at 592. The Court in *Lewis* stated the defendant recognized the handgun was "in a condition that the firearm [could] be discharged," within the meaning of N.C. Gen. Stat. § 14-314.1, where the handgun was both loaded and not secured by any type of safety mechanism. *See id.* However, this lone statement is not indicative of our Court having interpreted what it means for a firearm to be "in a condition that the firearm can be discharged" under N.C. Gen. Stat. § 14-314.1. As such, we are faced with an issue of first impression and must ascertain what it means for a firearm to be "in a condition that the firearm can be discharged" under N.C. Gen. Stat. § 14-315.1.

All statutory interpretation must begin with "the plain meaning of the words of the statute." *Sharpe v. Worland*, 137 N.C. App. 82, 85, 527 S.E.2d 75, 77 (2000). As is well established within the rules of statutory construction, "when the language of a statute is clear and without ambiguity, [the Court must] give effect to the plain

meaning of the statute[.]" *State v. Abshire,* 363 N.C. 322, 329, 677 S.E.2d 444, 450 (2009) (citation omitted). Conversely, "when the language of a statute is ambiguous, [the] Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Id.*

The pertinent language within N.C. Gen. Stat. § 14-315.1 describes a firearm to be "in a condition that the firearm can be discharged[.]" N.C. Gen. Stat. § 14-315.1(a)(i). In assessing this specific language, we note the term "discharge," in the context of firearms and other weaponry, is not explicitly, or even generally, defined within our General Statutes. Therefore, we turn to the dictionary definition of the word. *See Perkins v. Ark. Trucking Servs.,* 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) ("[I]n the absence of a contextual definition, [we] look to dictionaries to determine the ordinary meaning of the [word][.]"); *see also In re McLean Trucking Co.,* 281 N.C. 242, 252, 188 S.E.2d 452, 458 (1972) ("Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning."). Merriam Webster defines the verb "discharge" in several ways, including, in the context of firearms specifically, to "go off [or] fire." *Discharge,* MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/discharge (last visited May 8, 2024). Still, this definition—"to fire"—offers little to no guidance on what it means for a firearm to be "in a condition that the firearm can be discharged," as a firearm can technically be fired when it is loaded or unloaded (commonly referred to as "dry firing"). Further, it remains unclear whether the language of N.C. Gen.

- 10 -

Stat. § 14-315.1 contemplates the existence and/or use of manufacturer or additional safety mechanisms—i.e., is a firearm "in a condition that the firearm can be discharged" when secured by some type of safety mechanism?  Moreover, insofar as the statute applies to loaded firearms, it is unclear whether a loaded firearm is "in a condition that the firearm can be discharged" when it is simply loaded, or whether the firearm must be loaded with a bullet chambered.

Undoubtedly, this statute, by the language used therein, is subject to various interpretations.  Therefore, having attained no resolve as to what it means for a firearm "to be in a condition that the firearm can be discharged," it is fair to conclude the language of N.C. Gen. Stat. § 14-315.1 is ambiguous on its face.

In construing an ambiguous criminal statute, we must apply the rule of lenity. *See State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007).  The rule of lenity requires we "strictly construe the statute in favor of the defendant." *State v. Conway*, 194 N.C. App. 73, 79, 669 S.E.2d 40, 44 (2008).  The rule does not, however, require the words within the statute "be given their narrowest or most strained possible meaning." *Id.* (internal marks and citation omitted).  Rather, the statute should still be "'construed utilizing common sense and legislative intent.'" *Id.* (quoting *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (internal marks and citation omitted)).  In determining legislative intent, we look to "the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the

end to be accomplished, statutes in pari materia, the preamble, the title, and other like means[.]" *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 389 (1978) (internal marks and citation omitted).

Having already addressed the language of the statute and the plain meaning of the term "discharge," as used therein, we look to the use of the term in other criminal statutes as we consider our Court's interpretation of those statutes to be instructive.

Our North Carolina General Statutes, section 14-34.1, criminalizes, among other things, the act of discharging a firearm into occupied property. *See* N.C. Gen. Stat. § 14-34.1 (2023). Though this statute does not specifically define the word "discharge," we are convinced by the context of the statute that it intends "discharge" to apply only to loaded firearms. The essential elements of N.C. Gen. Stat. § 14-34.1—(1) the willful or wanton discharging (2) of a firearm (3) into any property (4) while it is occupied—cannot be met without the existence of shot, bullets, pellets, or other missiles. *See id.* If "discharge," under N.C. Gen. Stat. § 14-34.1, was defined to include dry firing a firearm, the essential element of "into any property" could never be met as there can be no "into" without a projectile. *See State v. Canady*, 191 N.C. App. 680, 689, 664 S.E.2d 380, 385 (2008) ("[T]he 'into [property]' element is satisfied when [a] bullet[] damage[s] the exterior of a building, even though there is no evidence that the bullet[] penetrated to the interior." (citation omitted)). In line with this reasoning, our Court in *State v. Dew* stated, "[d]ischarging a firearm means

firing a shot[.]" 379 N.C. 64, 72, 864 S.E.2d 268, 275 (2021) (citing *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995) (holding for purposes of double jeopardy, each discharge or shot fired was a separate event which could be charged)). Thus, "discharge," within the meaning of N.C. Gen. Stat. § 14-34.1 must be the firing of a loaded firearm. *See Canady*, 191 N.C. App. at 689, 664 S.E.2d at 385; *see also Dew*, 379 N.C. at 72, 864 S.E.2d at 275.

Before applying this definition to the statute at issue, we review the relevant legislative history to ensure this interpretation is consistent with the legislative intent.

Section 14-315.1 was enacted by our General Assembly in 1993, together with related legislation, all intended to protect minors and further prevent, among other things, the presence of weapons on school property. *See* An Act to Make it a Misdemeanor to Fail to Store Firearms in a Reasonable Manner for the Protection of Minors, ch. 558 § 2, 1993 N.C. Sess. Laws 558. Aside from being rewritten in 1994 to include language relating to North Carolina's newly adopted structured sentencing law, the statute has otherwise remained the same. *See* An Act to Make Technical and Conforming Changes to the General Statutes and Session Laws Relating to Structured Sentencing, Misdemeanors, and Felonies, ch. 14 § 11, 1994 N.C. Sess. Laws 14.

Since its enactment, N.C. Gen. Stat. § 14-315.1 has contained the ambiguous "in a condition that the firearm can be discharged" language. This language is

distinguishable from that used in other, earlier enacted legislation, which referenced the condition of firearms more distinctly using terms such as "loaded" and "unloaded." *See* N.C. Gen. Stat. §§ 14-316 (2023), (1971) (making it unlawful for a parent, or other similarly situated person, to allow a child under the age of twelve to have access to a firearm whether that firearm "be loaded or unloaded"); *see also* N.C. Gen. Stat. §§ 14-34 (2023), (1969) (criminalizing the act of pointing a gun at another person "whether such gun or pistol be loaded or not loaded"). Because the General Assembly previously referenced firearms using terminology such as "loaded" and "unloaded," we presume the use of broader "in condition that the firearm can be discharged" language was intentional. *See Comstock v. Comstock*, 244 N.C. App. 20, 24, 780 S.E.2d 183, 186 (2015) ("Where, as here, the General Assembly includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion." (internal marks and citation omitted)).

Upon considering N.C. Gen. Stat. § 14-315.1—the language within the statute, the use of similar language in other statutes, the legislative history, and the purpose of the statute—and applying the rule of lenity, we hold a firearm is "in a condition that the firearm can be discharged" when it is loaded. While our General Assembly intentionally drafted N.C. Gen. Stat. § 14-315.1 broadly by using the "in a condition that the firearm can be discharged" language, this holding does not overly restrict the statute. Our holding resolves some ambiguity, but it remains unclear whether the

statute contemplates the existence and/or use of any safety mechanisms, or whether a loaded firearm is "in a condition that the firearm can be discharged" simply because it is loaded, or if it must be loaded with a bullet chambered, ready to fire. Nonetheless, we need not address any further ambiguities within the statute as the firearm here was not loaded and thus, for our purposes, Defendant's revolver was not stored "in a condition that the firearm [could] be discharged" within the meaning of N.C. Gen. Stat. § 14-315.1.

Because Defendant's firearm was not stored "in a condition that the firearm [could] be discharged," there was insufficient evidence to support Defendant's conviction under Count I of 18 CRS 51387. We therefore reverse Defendant's conviction under Count I of 18 CRS 51387 for failure to store a firearm to protect a minor in violation of N.C. Gen. Stat. § 14-315.1.[3]

### 2. *Count II of 18 CRS 51387*

In addition to Count I, Defendant was charged with failure to store a firearm to protect a minor in violation of N.C. Gen. Stat. § 14-315.1 under Count II of 18 CRS 51387, which states:

> [D]efendant [ ] unlawfully and willfully did[,] as a person
> who resides in the same premises [ ] as a minor, [Kevin],
> leave firearms, possessed or owned by [ ] [D]efendant, in a
> condition that the firearm could be discharged and in a

---

[3] Defendant further argues the State failed to present substantial evidence to prove the remaining elements alleged in Count I of 18 CRS 51387. However, because we reverse Defendant's conviction under Count I, we need not address Defendant's remaining sufficiency of the evidence arguments as to that conviction.

manner that [ ] [D]efendant knew that an unsupervised minor would be able to gain access to the firearms, and the minor gained access to the firearms without the lawful permission of person having charge of the minor, and the minor caused the death of a minor with it not in self-defense.

Defendant argues the State failed to offer substantial evidence of each essential element of the crime charged under Count II. Specifically, Defendant contends the State failed prove both "the minor gained access to the firearms" and "the minor caused the death of a minor with it not in self-defense" where there was no evidence to suggest a minor gained access to any firearm other than the revolver specifically alleged in Count I.

The State concedes, for the reasons argued by Defendant, there was insufficient evidence to support Defendant's conviction under Count II. We agree and reverse Defendant's conviction under Count II for failure to store a firearm to protect a minor in violation of N.C. Gen. Stat. § 14-315.1.

**B. Involuntary Manslaughter**

Defendant contends the State failed to offer substantial evidence of each essential element of involuntary manslaughter under N.C. Gen. Stat. § 14-18. Specifically, Defendant argues because "the State's evidence was insufficient to sustain a conviction on the underlying misdemeanor, [ ] the involuntary manslaughter conviction must also be vacated."

Involuntary manslaughter is "the unlawful killing of a human being without

malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury[.]" *State v. Davis*, 15 N.C. App. 395, 399, 190 S.E.2d 434, 437 (1972) (internal marks, citation, and emphasis omitted). Thus, there is only one essential element the State is required to prove to establish involuntary manslaughter—an unlawful killing. *See Lewis*, 222 N.C. App. at 752, 732 S.E.2d at 593. However, the State may prove this essential element by showing the killing was proximately caused by either: "(1) an unlawful act not amounting to a felony nor naturally dangerous to human life[;] or (2) a culpably negligent act or omission." *Id.* at 751, 732 S.E.2d at 592.

Although Defendant's argument seemingly fails to recognize there are two theories under which the State may prove involuntary manslaughter—an unlawful act or a culpably negligent act or omission—the trial court arrested judgment on Count I of 18 CRS 51387 for failure to store the revolver to protect a minor. Specifically, during sentencing the State noted:

> THE STATE: It has occurred to me one thing to mention, Your Honor.
>
> TRIAL COURT: I'm sorry?
>
> THE STATE: One thing does occur to me. In 18 CRS 51387 Count 1, the improper storage that firearm, that Count 1 is the Taurus .44 Magnum.
>
> TRIAL COURT: Right.
>
> THE STATE: That is the unlawful act that supports the involuntary manslaughter.

TRIAL COURT: Right.

THE STATE: I'm—I wonder that Count 1 should be arrested because it actually was used for involuntary—

TRIAL COURT: Oh, yes.  If that was the weapon, yes.

THE STATE: Yes.

While the State could prove involuntary manslaughter under either of the two theories, the record evidence here indicates Defendant's conviction was based on her conviction of the underlying misdemeanor—failure to store the revolver to protect a minor.  The record does not include any reference to the alternate theory as Defendant neglected to argue the involuntary manslaughter charge in her motion to dismiss.  Not only this, but because the matter was on for bench trial, there was no discussion as to the inclusion of the alternate theory in a jury instruction or the verdict sheet.  Without more, we are unable to determine whether the trial court considered the sufficiency of the State's evidence as to the alternate theory—Defendant's commission of a culpably negligent act.  Thus, where we reverse the underlying misdemeanor, Count I of 18 CRS 51387, we must also vacate the involuntary manslaughter conviction which, based on the record, we must presume was based on Defendant's conviction of that misdemeanor.[4]

## V.  Conclusion

---

[4] Defendant further argues the State failed to offer substantial evidence to prove Defendant's conduct was the proximate cause of Kevin's death.  However, because we vacate Defendant's conviction, we need not address this contention.

We reverse Defendant's convictions for failure to store a firearm to protect a minor in violation of N.C. Gen. Stat. § 14-315.1 and vacate Defendant's conviction for involuntary manslaughter in violation of N.C. Gen. Stat. § 14-18.

REVERSED AND VACATED.

Judges MURPHY and STADING concur.